IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MONICA LOPEZ, §
§
*Plaintiff,* §                    SA-19-CV-01088-ESC
§
vs. §
§
ANDREW SAUL, COMMISSIONER OF §
SOCIAL SECURITY; §
§
*Defendant.* §

## ORDER

This order concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II and Supplemental Security Income under Title XVI ("SSI"). 42 U.S.C. §§ 405(g), 1383(c)(3). After considering Plaintiff's Opening Brief [#12], Defendant's Brief in Support of the Commissioner's Decision [#13], Plaintiff's Reply Brief [#14] the transcript ("Tr.") of the SSA proceedings [#9], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that substantial evidence does not support the Commissioner's decision finding Plaintiff not disabled and that reversible legal error was committed during the proceedings. The Commissioner's decision will therefore be **VACATED,** and this case be **REMANDED** for further fact-finding consistent with this opinion.

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28

U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#5, #8, #11].

## II. Factual Background

Plaintiff Monica Lopez ("Plaintiff") filed her application for DIB on May 24, 2017, alleging disability since February 11, 2017.  (Tr. 10, 214–34.)  At the time of her DIB application, Plaintiff was 47 years old, which is defined as a younger individual, with a college education.  (Tr. 255.)  Plaintiff has past relevant work as a personnel clerk, benefits clerk, payroll clerk, and industrial safety and health technician.  (Tr. 20.)  The medical conditions upon which Plaintiff based her initial DIB application were fibromyalgia, insomnia, diabetes, hand/wrist/arm problem, peripheral neuropathy, depression, anxiety disorder, and asthma.  (Tr. 254.)  Plaintiff's application for DIB was denied initially on September 21, 2017 and again upon reconsideration on January 26, 2018.  (Tr. 10, 124, 131.)

Following the denial of her claim, Plaintiff requested an administrative hearing.  Plaintiff and her non-attorney representative, Angie Saltsman, attended the administrative hearing before Administrative Law Judge ("ALJ") Katherine W. Brown on October 16, 2018.  (Tr. 29–79.)  Plaintiff, medical expert ("ME") James W. Washburn, D.O., and vocational expert ("VE") Zachariah R. Langley provided testimony at the hearing.  (*Id.*)

The ALJ issued an unfavorable decision on February 15, 2019.  (Tr. 7–28.)  The ALJ found that Plaintiff met the insured-status requirements of the SSA through December 31, 2022 and applied the five-step sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 11, 2017, the alleged disability onset date.  (Tr. 12.)  At step two, the ALJ found Plaintiff to have the following severe impairments: diabetes, peripheral neuropathy, depression,

2

anxiety, and fibromyalgia.  (Tr. 13.)  At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled.  (Tr. 13.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except that: Plaintiff can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; Plaintiff can understand, remember, and carry out simple instructions and make simple decisions; and Plaintiff requires a 15-minute break every two hours.  (Tr. 15.)  At step four, the ALJ determined that Plaintiff is unable to perform her past relevant work, but she can perform other jobs that exist in significant numbers in the national economy, such as charge account clerk, telephone quotation clerk, and call-out operator.  (Tr. 20–21.)  Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act and not entitled to receive DIB or SSI. (Tr. 22.)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on July 8, 2019.  (Tr. 1–6.)  On September 15, 2019, Plaintiff filed the instant case, seeking review of the administrative determination.

### III.  Governing Legal Standards

#### A.    Standard of Review

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a

---

[1]  In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Four elements of proof are weighed by the Court in determining if substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience.  *Martinez*, 64 F.3d at 174.  "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve.  *Id.*

While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

## B.    Entitlement to Benefits

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to do his previous work, and cannot, considering his age, education, and work experience, participate in any other kind of

substantial gainful work that exists in significant amount in the national economy—regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work.  42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

## C.  Evaluation Process and Burden of Proof

As noted above, SSA regulations require that disability claims be evaluated according to a five-step process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2016).  In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit."  *Newton*, 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)).  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition, age, education, or work experience.  20 C.F.R. § 404.1520(b).

Then, at the second step, the ALJ determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe.  20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone*, 752 F.2d at 1101 (internal quotation omitted).  An individual who does not have a "severe impairment" will not be found to be disabled.  20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 ("the Listings") of the regulations will be considered disabled without the consideration of other vocational factors.   20 C.F.R. §

404.1520(d).  If the claimant does not qualify under the Listings, the evaluation continues to the fourth step.  Before commencing the fourth step, however, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  *See also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).

At the fourth step, the ALJ reviews the RFC assessment and the demands of his past relevant work.  20 C.F.R. § 404.1520(f).  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.  *Id.*  If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability—given the claimant's residual capacities, age, education, and work experience—to do other work.  20 C.F.R. § 404.1520(g).  If a claimant's impairment precludes him from performing any other type of work, he will be found to be disabled.  *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work.  *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th

Cir. 1989).   A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.   *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV.  Analysis

Plaintiff raises three points of error in this appeal: (1) the ALJ's mental RFC determination is not supported by substantial evidence because it is not supported by any opinion, and the ALJ rejected the opinions without first developing the record; (2) the ALJ's physical RFC is unsupported by substantial evidence because she failed to weigh the opinion evidence in accordance with the proper standards; and (3) the ALJ's Step 5 determination is not supported by substantial evidence because the ALJ failed to reconcile conflicts between the VE's testimony and the DOT.   Having considered these arguments in light of the record and governing law, the Court finds that the ALJ did commit reversible error during the administrative proceedings and that her mental RFC determination is not supported by substantial evidence.

**A.**      **The ALJ's mental RFC determination is not supported by substantial evidence because the ALJ rejected every medical opinion regarding Plaintiff's mental limitations, and the record does not contain other evidence consistent with the ALJ's findings.**

Plaintiff contends the ALJ erred in determining Plaintiff's mental RFC by (1) rejecting every medical opinion regarding the extent of Plaintiff's mental limitations and reaching an independent conclusion; and (2) rejecting the medical opinion of Ms. Erickson without first developing the record and obtaining Ms. Erickson's treatment notes. The Court finds that because the ALJ rejected every medical opinion regarding Plaintiff's mental RFC, and there is no other evidence supporting the ALJ's mental RFC determination, the ALJ's mental RFC determination is not supported by substantial evidence.   This is harmful error and therefore warrants remand.

An RFC determination is the most an individual can still do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* at § 404.1545(a)(1)–(3).  The relative weight to be given to the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference."  *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

That said, the Fifth Circuit has made clear that an ALJ "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions."  *Williams v. Astrue*, 355 Fed. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995)).  Numerous district courts have relied on this principle in vacating RFC determinations that are not supported by an actual medical opinion and instead are based on the ALJ's subjective interpretation of the medical data in the record.  *See, e.g.*, *Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D. Tex. 2017) (finding the ALJ's RFC determination to be unsupported by substantial evidence under *Ripley*); *Fitzpatrick v. Colvin*, No. 3:15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) ("[T]he ALJ improperly made an independent RFC finding after declining to rely on any of the medical opinions addressing the effects of Fitzpatrick's mental impairments on his ability to work. . . ."); *Thornhill v. Colvin*, No. 3:14-CV-335-M (BN), 2015 WL 232844, at *10

(N.D. Tex. Jan. 16, 2015) ("While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*."). This is because an ALJ may not substitute his or her lay opinion for the uncontroverted medical opinions of the only physicians of record on the effects of the claimant's impairments. *Garcia v. Berryhill*, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018). Where "the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Id.*; *see also Beachum v. Berryhill*, No. 1:17-cv-00095-AWA, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) (citing *Garcia*).

Again, before reaching step four of the five-step sequential analysis, the ALJ determined that Plaintiff retained the RFC to perform sedentary work except that: Plaintiff can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; Plaintiff can understand, remember, and carry out simple instructions and make simple decisions; and Plaintiff requires a 15-minute break every two hours. (Tr. 15.)

When assessing the mental RFC, the ALJ considered the psychological opinion evidence, which included: the State agency psychological consultants' opinions; the opinion of Plaintiff's licensed professional counselor ("LPC"), Ms. Elisa Erickson; and the opinion of Plaintiff's primary care physician, Dr. Linda Esquivel, M.D. The State agency psychological consultants opined that Plaintiff did not have a severe mental impairment. (Tr. 85, 94, 103–105, 113–115.) The ALJ found the opinions of the State agency psychological consultants were not persuasive because the State agency consultants did not have the opportunity to review updated medical records or consider Plaintiff's testimony. (Tr. 19.)

Ms. Erickson and Dr. Esquivel both opined that Plaintiff had moderate to marked limitations in understanding, remembering, or applying information; marked to extreme limitations in concentration, persistence, or pace; mild to marked limitations in adapting or managing herself; and mild to marked limitations in interacting with others. (Tr. 487–492.)   The ALJ found Ms. Erickson's and Dr. Esquivel's opinions "not fully persuasive as they both did not support their assessments with specific citations to the record," and because "their finding of marked limitations in mental functioning is inconsistent with [Plaintiff's] generally unremarkable mental status examinations in Dr. Esquivel's treatment records," which described Plaintiff as "alert, oriented, and cooperative and as having normal thought processes, mood, and affect." (Tr. 19, 508, 523, 580.)   The ALJ also stated that Dr. Esquivel and Ms. Erickson failed to assess specific, function-by-function limitations in vocationally relevant terms. *Id*.

The Commissioner argues that the ALJ properly considered the medical opinions and correctly relied on Dr. Esquivel's contemporaneous observations in finding that Dr. Esquivel's treatment notes were inconsistent with her medical opinion.   Indeed, as the ALJ identified, some of Dr. Esquivel's notes describe Plaintiff as alert, oriented, and cooperative. (Tr. 19, 523.)   In those same treatment notes, along with several others, Dr. Esquivel also assesses Plaintiff with anxiety and severe stress. (Tr. 477, 478, 523, 564, 587, 589.)   The other two treatment notes cited by the ALJ in justifying a less limited mental RFC were actually records from two other doctors who were evaluating Plaintiff for physical conditions, not her mental health. (Tr. 508, 580.)   Importantly, Dr. Esquivel herself also determined that Plaintiff suffered from various mental limitations affecting her ability to do work-related activities on a day-to-day basis in a regular work setting. (Tr. 490–492.)   Dr. Esquivel reached these medical conclusions regarding Plaintiff's ability to work based on her personal observations during physical examinations, labs,

her medical expertise, and her months of treating Plaintiff throughout 2017 and 2018. *Id.* Moreover, her medical opinion is consistent with and supported by the conclusions reached by Plaintiff's LPC, Ms. Erickson, who also treated Plaintiff for several months. (Tr. 487–489.)

In some cases, it may be reasonable for the ALJ to weigh a doctor's treatment notes against the doctor's medical opinion.  But the principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially important in a case involving a mental disability. *See Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)).  In *Salmond v. Berryhill*, the Fifth Circuit held that the ALJ's RFC decision regarding the plaintiff's mental impairments was not supported by substantial evidence where the ALJ rejected the medical opinions of treating and examining doctors alike, without contradictory evidence supporting the ALJ's RFC determination from a medical expert of any kind. *Id.* at 819.  Similarly, here the ALJ rejected the medical opinions of both Dr. Esquivel and Ms. Erickson without any contradictory evidence from a medical expert or medical professional to support the ALJ's mental RFC determination.  These two treating medical professionals agree that Plaintiff's mental impairments would be expected to interfere with her ability to work to a much greater degree than the ALJ ultimately determined. They both opined that Plaintiff suffered from a moderate to extreme mental limitation in eighteen out of the twenty-two named activities associated with regular employment. (Tr. 487–492.)  In contrast, the ALJ's mental RFC determination merely stated Plaintiff can "understand, remember, and carry out simple instructions and make simple decisions." (Tr. 15.)

The Court is careful not to "reweigh the evidence or substitute our judgment" for that of the ALJ.  *Whitehead v. Colvin*, 820 F.3d 776, 782 (5th Cir. 2016).  An ALJ's decision is subject to judicial review and a "finding of no substantial evidence is appropriate only if no credible

evidentiary choices or medical findings support the decision." *Id.* at 779 (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Here, the record does not support the ALJ's decision. Even though the "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," in this case, there is insufficient evidence to support the ALJ's conclusion. *See Garcia v. Berryhill*, 880 F.3d 700, 705 n.7 (5th Cir. 2018) (quoting *Newton*, 209 F.3d at 455). Accordingly, the ALJ's mental RFC determination is not supported by substantial evidence. This is harmful error and thus requires remand for further consideration of the medical opinion evidence and Plaintiff's mental RFC.

Plaintiff also contends that the ALJ failed to fulfill her duty to develop the facts fully and fairly by not obtaining treatment notes from Ms. Erickson and that such failure warrants remand. Because the Court has already determined that remand to reconsider Plaintiff's RFC is appropriate, the Court declines to reach this issue.

**B.    The ALJ properly weighed the opinion evidence regarding Plaintiff's physical RFC and her physical RFC determination is supported by substantial evidence.**

Plaintiff further argues that the ALJ's physical RFC determination is not supported by substantial evidence because the ALJ failed to weigh the opinion evidence in accordance with proper standards. The Court disagrees.

The Social Security Administration recently promulgated a new rule regarding RFC determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed her claim on May 24, 2017, the new rule applies. This rule addresses how the Commissioner is to consider and articulate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. §

404.1527(c)(2).  The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding.  *Id.* at § 404.1520c(a).  Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are "supportability" and "consistency."  *Id.*  The other factors are relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim.  *Id.* at § 404.1520c(c).  The Commissioner must articulate how persuasive he finds each of the opinions in the record.  *Id.* at § 404.1520c(b).

Again, the ALJ found Plaintiff retained the RFC to perform sedentary work with the following limitations: Plaintiff can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; Plaintiff can understand, remember, and carry out simple instructions and make simple decisions; and Plaintiff requires a 15-minute break every two hours.  (Tr. 15.)  In determining Plaintiff's physical RFC, the ALJ applied the new Section 404.1520c and considered the relevant opinion evidence, which included: the State agency consultants' opinion; Dr. Esquivel's opinion; and the ME Dr. Washburn's medical opinion. (Tr. 15–20.)  For each opinion, the ALJ explained whether she found the opinion to be supported by Plaintiff's treatment notes or the objective examination findings, as applicable, and whether or not she found the opinion to be persuasive.  (Tr. 18–19.)  The ALJ ultimately found the State agency consultants' opinion and Dr. Esquivel's opinion unpersuasive and found the ME Dr. Washburn's medical opinion persuasive. These findings are properly within the ALJ's discretion.  *See Chambliss*, 269 F.3d at 523 & n.1 ("The relative weight to be given the evidence contained in the record is within the ALJ's discretion.").

Plaintiff contends that the ALJ failed to provide a valid reason for finding Dr. Washburn's opinion more persuasive than Dr. Esquivel's opinion. For the following reasons, the Court finds the ALJ properly considered the consistency and supportability of all three of the medical opinions regarding Plaintiff's physical RFC.

First, the ALJ considered the opinion of the State agency medical consultants but found it not fully persuasive as the State agency consultants did not have an opportunity to review the most updated records or Plaintiff's testimony. (Tr. 19.) The State agency medical consultants opined that Plaintiff's physical impairments were non-severe, but the ALJ considered the totality of the evidence and found that Plaintiff had severe physical impairments and associated limitations. (Tr. 18.)

The ALJ also considered the opinion of Dr. Linda Esquivel, M.D., who opined that Plaintiff would need to recline or lie down during an eight-hour workday, in excess of typically allowed breaks; Plaintiff could walk zero blocks without rest or significant pain; Plaintiff could sit two hours total and could not stand/walk at all; Plaintiff would need unscheduled breaks, every hour, lasting 20 to 30 minutes; Plaintiff could occasionally lift and carry less than 10 pounds; Plaintiff had limitations to repetitive reaching, handling, and fingering; and Plaintiff would be absent from work more than four times per month. (Tr. 18, 493–494.) The ALJ found Dr. Esquivel's opinion was not persuasive because Dr. Esquivel did not cite to any objective evidence to support her assessments, other than Plaintiff's subjective statements regarding her symptoms and diagnoses. (Tr. 18–19.) The ALJ also considered the consistency of Dr. Esquivel's opinion with the record. She found that her opinion overstated Plaintiff's limitations as compared with the benign objective findings in her treatment notes. Specifically, the ALJ cited Dr. Esquivel's treatment notes stating that Plaintiff generally ambulated with a normal gait,

and she displayed normal muscle strength and a full range of motion in her joints. (Tr. 19, 383, 420, 466, 527, 589.)  In addition, the ALJ found Dr. Esquivel's assessment of extreme exertional limitations was inconsistent with Plaintiff's reported activities, which included completing light chores, preparing simple meals, shopping at stores, driving a car daily, and attending church weekly. (Tr. 19, 52–53, 265, 296.)

Lastly, the ALJ considered the opinion of the testifying medical expert, Dr. James W. Washburn, D.O., who opined that Plaintiff would require a fifteen-minute break every two hours and could stand and/or walk no more than two hours in a workday, but her ability to sit was not limited. (Tr. 19, 36–45.) The ALJ found his opinion persuasive because Dr. Washburn supported his opinion with a thorough review of the longitudinal record and citations to the objective evidence, and because his opinion was consistent with the benign findings in Plaintiff's physical examinations. *Id*.

Plaintiff maintains that Dr. Washburn failed to cite a treatment note or document to support his opinion. (Pl.'s Opening Brief [#12] at 13.)  But the Court's independent review of the hearing transcript supports the ALJ's finding that Dr. Washburn included citations to objective evidence. (Tr. 37–40.)  Plaintiff further maintains that the ALJ inappropriately relied on the benign physical examinations while ignoring the only evidence of fibromyalgia contained in Dr. Zuniga-Montes's treatment notes. (Pl.'s Opening Brief [#12] at 14.) However, the ALJ included fibromyalgia as one of Plaintiff's severe impairments and specifically included postural limitations in her RFC assessment to account for the weakness and pain from fibromyalgia. (Tr. 13, 20.)

In sum, ALJ's decision demonstrates that she properly considered all three of the medical opinions regarding Plaintiff's physical RFC, as well as other evidence in the record, in

determining this physical aspect of Plaintiff's RFC. Therefore, the Court finds that the ALJ's physical RFC determination is supported by substantial evidence.

**C.      The Court need not decide whether there was an error at step five.**

Plaintiff's third argument is that the ALJ's step five determination is not supported by substantial evidence because the ALJ failed to reconcile conflicts between the VE's testimony and the DOT.  Because  the ALJ's mental RFC determination is not supported by substantial evidence, the merits of Plaintiff's step five argument need not be addressed.

Therefore, the Court concludes that this case should be sent back to the administrative level for reconsideration of the opinion evidence and Plaintiff's mental RFC before a step five determination of whether Plaintiff is able to do any other work is determined.

**V.  Conclusion**

Based on the foregoing, the Court finds that reversible error was committed during these proceedings and such error warrants remand for further consideration of the opinion evidence and Plaintiff's mental RFC. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **VACATED** this case be **REMANDED** for further fact-finding consistent with this opinion.

SIGNED this 22nd day of August, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

16